# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Hicks Unlimited, Inc., Petitioner,

v.

UniFirst Corporation, A Massachusetts Corporation, Respondent.

Appellate Case No. 2021-001042

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Anderson County
R. Scott Sprouse, Circuit Court Judge

---

Opinion No. 28158
Heard March 29, 2023 – Filed June 14, 2023

---

### REVERSED

---

James S. Eakes, of Allen & Eakes, and David James Brousseau, of McIntosh, Sherard, Sullivan & Brousseau, both of Anderson, for Petitioner.

Ian Douglas McVey, of Turner Padget Graham & Laney, PA, of Columbia, and Jude C. Cooper, of Fort Lauderdale, Florida, both for Respondent.

---

**JUSTICE HILL:** Hicks Unlimited, Inc. contracted to rent uniforms for its employees from UniFirst Corporation. The contract contained an arbitration

provision stating all disputes between them would be decided by binding arbitration to be conducted "pursuant to the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration Association [AAA] and shall be governed by the Federal Arbitration Act [FAA]."

A dispute arose. After some procedural wrangling, UniFirst moved to compel arbitration. Hicks contended the arbitration agreement was unenforceable because it did not comply with the notice requirements of South Carolina's Arbitration Act (SCAA). S.C. Code Ann. §§ 15-48-10 to –240 (2005 & Supp. 2022). UniFirst responded that the arbitration provision was governed by the FAA, which preempts the SCAA's notice provision. The circuit court denied the motion to compel arbitration, ruling the contract did not implicate interstate commerce and, therefore, the FAA did not apply. The circuit court further ruled the arbitration provision was not enforceable because it did not meet the SCAA's notice requirements.

UniFirst appealed. The court of appeals reversed, holding arbitration should have been compelled because the contract involved interstate commerce and, therefore, the FAA preempted the SCAA. We granted Hicks' petition for a writ of certiorari to review the court of appeals' ruling that the FAA applied.

## I.

Whether a contract involves interstate commerce and, therefore, whether the FAA preempts the SCAA, is a question of law we review *de novo*. *Bradley v. Brentwood Homes, Inc.*, 398 S.C. 447, 453, 730 S.E.2d 312, 315 (2012). We will not, however, disturb the factual findings of the circuit court that have rational support in the record. *Id*.

## II.

Hicks contends the court of appeals erred in ruling the contract involved interstate commerce. UniFirst, on the other hand, argues there is no need to address the interstate commerce issue because the parties agreed by contract that any dispute between them would be resolved by binding arbitration and that the arbitration "shall be governed by" the FAA. UniFirst believes this is enough to summon the FAA's preemption power, knocking out the SCAA notice requirement. *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989) (although the FAA contains no express preemption provision, state laws are preempted to the extent they conflict with federal law in the sense that their application would undermine the goals and policies of the FAA).

We reject UniFirst's argument. A provision in an arbitration agreement declaring that the FAA applies is not a *fait accompli*. The FAA owes its existence to Congress' constitutional power to regulate interstate commerce. The heart of the FAA is 9 U.S.C. § 2, which states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract
> . . . .

We construe UniFirst's argument to be that parties may agree to have their dispute arbitrated by the FAA's methods and procedure, even if their contract only involves intrastate commerce. But the FAA does not furnish a set procedure for how the arbitration should go; that type of architectural detail is found in the AAA rules, which the parties had already settled on. What UniFirst is really asking us to do is to bless the principle that parties may agree—preemptively—that a court may apply the FAA's federal preemption power to their contract without first peeking behind the curtain to ensure interstate commerce is involved.

This we cannot do. The FAA is a sequential whole whose enforcement and preemption power may only be called upon when the dispute arises against the backdrop of a written provision in a "maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court long ago announced that the FAA menu is not a la carte. In *Bernhardt v. Polygraphic Co. of America*, the Court confronted an issue instructive to the problem before us. 350 U.S. 198 (1956). Mr. Bernhardt sued his employer in a Vermont state court. The employer removed the suit to federal district court and then sought to stay the court action and compel arbitration pursuant to 9 U.S.C. § 3, contending the parties had an agreement to arbitrate all disputes before the AAA. *Id*. at 199. The district court denied the stay, ruling Vermont law provided arbitration agreements were revocable by any party up to the time of award. The Court of Appeals reversed. *Id*. The Supreme Court reversed the Court of Appeals, holding the FAA did not apply because there was no evidence the contract evidenced a maritime transaction or one involving interstate commerce. *Id*. at 200–02.

What is revealing for our purpose here is that the Court in *Bernhardt* took direct aim at and shot down the notion that a party could invoke the stay provision of § 3 of the FAA even when the underlying contract did not satisfy § 2's interstate commerce requirement. *Id*. at 201 (noting the Court of Appeals had floated the idea that § 3 "stands on its own footing. It concluded that while § 2 makes enforceable arbitration agreements in maritime transactions and in transactions involving commerce, § 3 covers all arbitration agreements even though they do not involve maritime transactions or transactions in commerce. We disagree with that reading of the Act"). The Court has since reaffirmed *Bernhardt* and this core principle. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019) ("[A]ntecedent statutory provisions limit the scope of the court's powers under §§ 3 and 4. Section 2 provides that the [FAA] applies only when the parties' agreement to arbitrate is set forth as a 'written provision in any maritime transaction or a contract evidencing a transaction involving commerce.'"). As the Court explained:

> [T]o invoke its statutory powers under §§ 3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2. The parties' private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the Act authorizes a court to stay litigation and send the parties to an arbitral forum.

*Id*. at 537–38; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 (1967) ("[I]t is clear beyond dispute that the federal arbitration statute is *based upon and confined to* the incontestable federal foundations of 'control over interstate commerce and over admiralty.'" (emphasis added) (quoting H.R.Rep.No.96, 68th Cong., 1st Sess., 1 (1924); S.Rep.No.536, 68th Cong., 1st Sess., 3 (1924))). In *Southland Corp. v. Keating*, the Supreme Court explained that Congress had to rely on its Commerce Clause power to make the FAA apply in state courts, which meant the FAA's "reach would be limited to transactions involving interstate commerce." 465 U.S. 1, 14 (1984); *see also id.* at 14–15 ("We therefore view the 'involving commerce' requirement in § 2, not as an inexplicable limitation on the power of the federal courts, but as a necessary qualification on a statute intended to apply in state and federal courts.").

We hold that a party seeking to compel arbitration under the FAA must demonstrate that the contract implicates interstate commerce. Just as the parties may not prove the requisite connection to interstate commerce by agreeing their transaction or relationship "contemplates" interstate commerce, they may not make the connection

by declaring or contemplating the FAA will govern. Instead, the party pushing arbitration must prove the contract involves "commerce in fact." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995). To the extent *Munoz v. Green Tree Fin. Corp.* and *Damico v. Lennar Carolinas, LLC* have been read as allowing parties to agree the FAA preempts South Carolina law without an accompanying demonstration the contract involves interstate commerce, we clarify now they do not. *Munoz*, 343 S.C. 531, 542 S.E.2d 360 (2001); *Damico*, 430 S.C. 188, 844 S.E.2d 66 (Ct. App. 2020), *aff'd in part, rev'd in part*, 437 S.C. 596, 879 S.E.2d 746 (2022). Consistent with our holding here, the *Munoz* and *Damico* courts held the FAA preempted South Carolina law only after finding the contracts at issue involved interstate commerce in fact. *Munoz*, 343 S.C. at 539, 542 S.E.2d at 363–64; *Damico*, 430 S.C. at 196, 844 S.E.2d at 70.

There are Texas cases to the contrary. *See, e.g.*, *In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App. 2002) ("We hold that when, as here, the parties agree to arbitrate under the FAA, they are not required to establish that the transaction at issue involves or affects interstate commerce.") This line of cases has proceeded unadorned by any logic or reasoning that we can find, and we decline to join it.

## III.

Although we have held the parties may not avail themselves of FAA preemption without satisfying 9 U.S.C. § 2's commerce requirement, we must still address the court of appeals' conclusion that the contract between Hicks and UniFirst implicated interstate commerce. The court of appeals reached its conclusion after noting the following points: UniFirst shipped the uniforms from Kentucky to South Carolina, and Hick's payments were made to and deposited by UniFirst in Massachusetts, the site of UniFirst's headquarters and board of directors.

The phrase "involving commerce" as used in the FAA is "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). The Commerce Clause grants Congress the power to regulate (1) the use of channels of interstate commerce; (2) instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities having a substantial relation to interstate commerce. *United States v. Morrison*, 529 U.S. 598, 609 (2000); *see also Cape Romain Contractors, Inc. v. Wando E., LLC*, 405 S.C. 115, 122, 747 S.E.2d 461, 464 (2013).

To ascertain whether a contract involves interstate commerce, the court examines "the agreement, the complaint, and the surrounding facts," including any affidavits

submitted. *Dean v. Heritage Healthcare of Ridgeway, LLC*, 408 S.C. 371, 380, 759 S.E.2d 727, 732 (2014) (quoting *Bradley*, 398 S.C. at 455, 730 S.E.2d at 316); *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 594, 553 S.E.2d 110, 117 (2001) ("Both the United States Supreme Court and this Court have relied on affidavits when determining whether a transaction involves interstate commerce."). The inquiry is fact dependent and focuses on what the specific contract terms require for performance. The party claiming the FAA preempts state law bears the burden of proving the contract involves interstate commerce. *Bradley*, 398 S.C. at 458, 730 S.E.2d at 317–18.

Under the FAA, "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Citizens Bank*, 539 U.S. at 56–57 (citation omitted). Unlike the banking industry at issue in *Citizens Bank*, the uniform supply business is not an activity that is, in general, subject to federal control. Reviewing the contract, the pleadings, and surrounding facts reveals that the contract was between a Massachusetts company and a South Carolina company. There is no other sign the contract was to be performed using instrumentalities or channels of interstate commerce, or that the uniform supply involved any thing or matter located beyond South Carolina's borders.

The problem we see with the court of appeals' conclusion is that the points it relied upon to find the contract between Hicks and UniFirst involved interstate commerce debuted too late: they first appeared in UniFirst's motion to alter or amend and were never mentioned by the circuit court. The court of appeals could not use them to rescue UniFirst's interstate commerce argument. *See Johnson v. Sonoco Prods. Co.*, 381 S.C. 172, 177, 672 S.E.2d 567, 570 (2009) ("An issue may not be raised for the first time in a motion to reconsider."); *Spreeuw v. Barker*, 385 S.C. 45, 68–69, 682 S.E.2d 843, 855 (Ct. App. 2009) (stating evidence that first appeared as attachment to a Rule 59(e), SCRCP motion cannot be considered on appeal). At any rate, the points came from assertions made by UniFirst's counsel. They are not mentioned in the pleadings, not apparent from the language of the contract, nor supported by affidavits or other evidence. It was error to rely on them in deciding whether the contract involves interstate commerce. *See McClurg v. Deaton*, 395 S.C. 85, 86 n.1, 716 S.E.2d 887, 887 n.1 (2011) ("[A m]emorandum in support of a motion is not evidence."); 6 C.J.S. Arbitration § 70 ("Statements in motions and briefs do not constitute evidence to be considered by a trial court when ruling on a motion to compel arbitration.").

In sum, because the contract between Hicks and UniFirst did not involve interstate commerce in fact, the order of the circuit court denying UniFirst's motion to compel arbitration is affirmed, and the court of appeals' opinion is

**REVERSED.**

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**